THOMAS R. KAUFMAN, Cal. Bar No. 177936
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
tkaufman@sheppardmullin.com
1901 Avenue of the Stars, 16th Floor
Los Angeles, California 90067-6017
Telephone: 310-228-3700
Facsimile: 310-228-3701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
HAYLEY S. GRUNVALD, Cal. Bar No. 227909
hgrunvald@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone: 619-338-6500
Facsimile: 619-234-3815

Attorneys for Defendants
HOMESERVICES LENDING LLC and
DOHERTY EMPLOYMENT GROUP, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BUCHANAN, individually and on behalf of all others similarly situated; BRIAN SHAW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOMESERVICES LENDING LLC, Doing Business As HOMESERVICES; and DOHERTY EMPLOYMENT GROUP, INC.<br><br>Defendants. | Case No. 3:11-CV-0922-L-MDD<br><br>Assigned to Hon. James M. Lorenz<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Supplemental Declaration of Danny Valentini Filed Concurrently Under Separate Cover]<br><br>DATE: December 3, 2012<br>TIME: 10:30 a.m.<br>CRTRM: 14 |

Defendants HomeServices Lending, LLC ("HSL") and Doherty Employment Group, Inc. (collectively "Defendants") respectfully submit their opposition to Plaintiffs' Motion for Class Certification.[1]

---

[1] Plaintiffs have sued their employer (HSL) and the company to whom HSL outsources its human resources functions (Doherty). For purposes of this opposition, there is no material distinction between HSL individually and Defendants collectively.

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF OPPOSITION ........................................... - 1 -

II. SUMMARY OF RELEVANT FACTS ........................................................................ - 3 -

    A. Most of the Relevant Facts Were Set Forth in Defendants' Motion to Deny Class Certification ........................................................................................... - 3 -

    B. E-Mails Cited by Plaintiffs Concerning HMC Participation in Marketing Programs ....................................................................................................... - 3 -

    C. The Testimony of Former Manager Michael Reza Plaintiffs Cited ............. - 5 -

    D. The Written Instructions HMCs Receive When They Sign Up for Websites or Enroll in the Other Marketing Programs at Issue ...................... - 6 -

    E. Plaintiffs Complete Lack of Evidence from Other California HMCs .......... - 6 -

III. LEGAL ARGUMENT ................................................................................................. - 7 -

    A. The Primary Issue, Which Is Highly Individual, Will Be Whether Each HMC Reasonably Felt Coerced to Spend Money on a Marketing Program ........ - 7 -

        1. The Elements of a Claim Under Labor Code Section 2802 Include Proof That an Expense Incurred Was Necessary Rather Than Optional ............................................................................................. - 7 -

        2. The Predominant Individualized Issue Will Be Whether Any HMC Voluntarily Signed Up for a Website or Other Marketing Program ..... - 8 -

    B. A Second Important Individualized Issue Will Be Whether Individual HMCs Received More Value For Their Expenditures Than They Expended on Websites or Marketing Programs ............................................ - 12 -

    C. The Cases Plaintiffs Cite In Support of Class Certification of Expense Reimbursement Claims are Readily Distinguishable ................................... - 13 -

    D. Plaintiffs Are Also Inadequate Class Representatives ................................. - 14 -

IV. CONCLUSION ........................................................................................................... - 16 -

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ayala v. Antelope Valley Newspapers, Inc.*,
 __ Cal. App. 4th ___, 2012 Cal. App. LEXIS 1083 (Oct. 17, 2012) ........................................ 14

*Cassady v. Morgan, Lewis & Bockius*
 145 Cal. App. 4th 220 (2006) .................................................................................................... 7

*Estrada v. FedEx Ground Package Systems, Inc.*,
 154 Cal. App. 4th 1 (2007) ...................................................................................................... 13

*Gattuso v. Harte-Hanks Shoppers*,
 42 Cal. 4th 554 (2007) ............................................................................................................. 13

*Grissom v. Vons Companies, Inc.*
 1 Cal. App. 4th 52 (1991) .......................................................................................................... 7

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497, 508 (9th Cir. 1992) ........................................................................................... 14

*Howard v. Gap, Inc.*
 2009 U.S. Dist. LEXIS 105196 (N.D. Cal. Oct. 29, 2009) ................................. 9, 10, 11, 12, 13

*Morgan v. Wet Seal, Inc.*,
 ___ Cal. App. 4th ___, Cal. App. Case No. A133590 (Nov. 7, 2012) .............................. 10-11

*Novak v. The Boeing Company*
 2011 U.S. Dist. LEXIS 83031 (C.D. Cal. Jul. 20, 2011) ........................................................... 7

*Washington v. Joe's Crab Shack*
 271 F.R.D. 629 (N.D. Cal. 2010) ............................................................................................. 10

*Wilson v. Kiewit Pacific Co.*,
 2010 U.S. Dist. LEXIS 133304 (N.D. Cal. Dec. 6, 2010) ....................................................... 14

*Zalkind v. Ceradyne, Inc.*
 194 Cal. App. 4th 1010 (2011) ................................................................................................ 12

Statutes

Labor Code § 2802 ......................................................................................................................7, 10

## I. INTRODUCTION AND SUMMARY OF OPPOSITION

Defendants have already affirmatively moved to deny class certification on the ground that the record reveals that individualized issues necessarily predominate over common issues. That motion laid out the relevant California law on expense reimbursement and explained how an employer must reimburse *only* those expenses that are necessary rather than optional. The question of whether the expenses at issue here were necessary or optional cannot be litigated on a classwide basis using collective proof, but rather the answer may vary from individual HMC to HMC. Plaintiffs' own motion for class certification only serves further to underscore the predominance of individual issues here and the total absence of classwide proof. In addition, this opposition brief will explain how Plaintiffs are not entitled to class certification for the separate and independent reason that they are inadequate class representatives.

Plaintiffs merely establish in their moving papers that many HMCs who opted to have websites or participate in other marketing programs were required to contribute financially to the cost of such programs, either through authorized wage deductions or authorized credit card charges. What Plaintiffs lack, however, is evidence of a California-wide policy that made these expenses necessary rather than optional across the class. Plaintiffs cannot and do not even try to dispute that many HMCs worked without a website and that *most* HMCs never participated in any of the other marketing programs at issue. How can an expense be "necessary" if many HMCs never incurred it and still performed their jobs? As Inigo Montoya said in *The Princess Bride*, "You keep using that word. I do not think it means what you think it means."

Indeed, to prove the alleged "necessary" nature of websites and marketing programs, Plaintiffs rely primarily on individual e-mails from 2009 and 2010 that Danny Valentini sent to an unknown set of HMCs in which Mr. Valentini notes that many of the HMCs do *not* have websites and are *not* participating in marketing programs more than a year into the class period. Although Mr. Valentini has encouraged his HMCs to enroll, Plaintiffs lack any evidence that HMCs felt coerced by Mr. Valentini's entreaties to sign up or that there were any other adverse consequences to an HMC who declined to enroll. In fact, Plaintiff Buchanan testified that he

-- 1 --

declined a website and suffered no consequence whatsoever. Furthermore, Plaintiffs introduce no competent evidence that the 70% of the HMCs who did not report to Mr. Valentini even received encouragement to enroll in these programs. This falls far short of establishing a classwide HSL policy that HMCs had to sign up for websites and enroll in other marketing programs, as would be required to trigger reimbursement obligations under Section 2802.

Instead, the evidence is just as it was in the *Howard* case that Defendants analyzed at length in their motion to deny class certification. Different HMCs have different stories as to whether they participated in these programs, why they participated (if they did), what they were told about the programs before they enrolled, and whether they reasonably felt coerced to enroll. Many HMCs opted not to get a website, not to enroll in the other marketing programs, or to cancel a website or marketing program after initially trying them out. Because Plaintiffs lack any expert to perform any sort of statistical analysis, survey or other means of collective proof, this case will necessarily devolve into more than 120 mini-trials, a proposition squarely at odds with class litigation.

Separate and apart from the above, Plaintiffs' motion reveals that Plaintiffs are inadequate class representatives. Plaintiffs have latched a few class claims to their own individual action for unpaid overtime and meal periods. They plainly are more interested in those individual claims than the claims as they did not even both to gather a single declaration from another HMC to support their contention that all HMCs understood having a website and participating in marketing programs was necessary. Mr. Buchanan is an especially weak class representative as he admits he was able to skirt the alleged obligation to enroll in these programs. In short, Shaw and Buchanan are simply inadequate to defend the interests of the absent putative class members. Accordingly, the proper course here is to deny class certification and allow any individual HMC who believes he or she was coerced to get a website or participate in a marketing program to pursue relief individually.

For the foregoing reasons, Defendants respectfully request that the Court deny class certification and effectively narrow this case to a two-plaintiff wage and hour case..

-- 2 --

1  II.  **SUMMARY OF RELEVANT FACTS**

    A.  **Most of the Relevant Facts Were Set Forth in Defendants' Motion to Deny Class Certification**

Defendants set forth the facts relevant to class certification in their own motion to deny class certification at pages 2 to 8 of their points and authorities (Docket No. 52). Those facts are incorporated herein by reference. Defendants also filed an Appendix of Evidence with that motion that contains most of the evidence they are relying upon to contest class certification. Below, Defendants address just those additional facts that Plaintiffs put at issue in their own motion for class certification.

    B.  **E-Mails Cited by Plaintiffs Concerning HMC Participation in Marketing Programs**

Plaintiffs do not identify any kind of written policy that states that HMCs must have websites or must participate in the other marketing programs. On the contrary, the data set forth in Exhibit I in Defendants' Appendix of Evidence in support of its motion reflects the large number of HMCs who did *not* participate.[2] Plaintiff introduces no evidence that an HMC was disciplined for refusing a website or not enrolling in a marketing program.

Rather than identify a policy, Plaintiffs quote from specific e-mails Danny Valentini wrote to an unidentified set of HMCs (the "to" line is missing from each e-mail so the recipients are unknown). Plaintiffs try to quote a word here and a word there as proof that websites and marketing programs were mandatory, but the documents reflect just the opposite.

The first of these e-mails, Plaintiffs' Exhibit R, is dated May 7, 2009. The class period in this action reaches back to January 1, 2008, so this e-mail was sent more than 16 months into the relevant period. In the first two paragraphs of this e-mail, Valentini states that a survey reveals that HSL-CA had the lowest marketing support scores from Prudential of any mortgage company. He also notes that 30% of the HMCs in his area do not have a website. He then *asks*

---

[2] Plaintiffs contend at page 4 of their brief that 90 HMCs and Jr. HMCs experienced wage deductions to pay for websites. This is inaccurate and the correct numbers are lower as set forth within the declaration of Tracy Whartman and pages 1 and 2 of Exhibit I, all contained in Defendants' Appendix of Evidence in Support of Motion to Deny Certification.

HMCs to invest in a website: "I would like to ask everyone that does NOT have a website to invest in one ASAP." Nothing in this e-mail threatens adverse action to HMCs, like Buchanan, who declined to make such an investment.

The next e-mail, within Plaintiffs' Exhibit V, is from November 2009. Valentini announces a new "marketing initiative" in this e-mail where HSL will pay part of the standard cost if HMCs sign up for one of three specific marketing programs. Valentini further explains that the investment in these programs will pay for itself in the increase in resulting business: "Yes it costs money!! But I think it may have already cost you and I more not doing it."

The next e-mail, within Plaintiffs' Exhibit W, is dated January 20, 2010 and is from Valentini's clerical assistant, and simply provides instructions of the paperwork to be completed to activate enrollment in a marketing program. Plaintiffs point out that HMCs initially paid the set up fees on their credit cards, but nowhere does this e-mail state that employees had to participate in these programs. Indeed, the letter states that if employees do not fill out the paperwork "your marketing mailers will not be sent out."

The next e-mails, which are dated September 2010 and January 2011 are within Plaintiffs' Exhibit DD. They note that HSL "requires 100% HMC participation in a regular contact management program." Plaintiffs try to construe this e-mail as requiring participation in a paid marketing program, but they do not lay any foundation for that erroneous conclusion. In fact, as shown by the limited participation in programs reflected in Defendants' Exhibit I, there was never a requirement that HMCs participate in one of the paid HSL marketing programs at issue in this case. Furthermore, Valentini explains in his supplemental declaration that the e-mails at issue were "in no way meant to make participation in an HSL-sponsored contact management program mandatory" and that a regular contact management program could be as simple as the HMC sending "handwritten postcards to former and prospective borrowers."[3]

---

[3] Supplemental Declaration of D. Valentini ¶ 7 (filed concurrently herewith).

The last e-mail, which is dated May 2010 and is within Plaintiffs' Exhibit EE, is an angry e-mail from Valentini to Marketing Manager Tracy Whartman complaining about a mix-up that resulted in mailers from multiple HMCs being sent to the same client. Valentini notes that he "strongly encouraged" his HMCs to participate in this program and is embarrassed by the snafu with the mailing. Again, Valentini does not state that HMCs *had* to participate, but rather that he encouraged participation among his HMCs.

**C.  The Testimony of Former Manager Michael Reza Plaintiffs Cited**

In September 2012, Plaintiffs deposed Michael Reza, a former HMC regional manager who had supervised Valentini and the other California branch managers until mid-2012. Plaintiffs have included as their Exhibit B, relevant excerpts from Mr. Reza's deposition.

Mr. Reza testifies within these excerpts that he believes the managers generally encouraged HMCs to get websites and enroll in marketing programs.[4] But when Mr. Reza was asked whether HMCs were required to participate in specific marketing programs, Mr. Reza testified "I don't believe they were required to use any specific marketing piece," "I don't know if [Danny Valentini] did or not [require participation in a marketing program]," and "I don't believe [Michael Moses or Jeff Uniak] did.[5] With respect to HSL websites, Mr. Reza confirmed that "for the most part" HMCs used them, but he couldn't say whether they were merely requested or required, and that they may have been required in some cases but not others.[6] Mr. Reza also testified that in some cases, HMCs could submit marketing expenses on their expense reports and get them fully reimbursed.[7]

---

[4]  Reza Dep. 128:19-129:9, 130:2-5.
[5]  Reza Dep. 131:5-132:7.  See also Reza Dep. 148:11-22 (stating he believed that Moses and Uniak likely encouraged participation in marketing programs, but he did not know any details of what they said or to whom).
[6]  Reza Dep. 133:4-135:25.
[7]  Reza Dep. 139:2-140:9.

In sum, Mr. Reza merely confirmed that there were paid marketing programs that Branch Managers encouraged some HMCs to enroll in, but he had no further details as to whether any HMC was forced to participate as opposed to merely encouraged.

### D. The Written Instructions HMCs Receive When They Sign Up for Websites or Enroll in the Other Marketing Programs at Issue

Defendants' Appendix of Evidence, at Exhibits D through H, puts into the record exemplars of the materials HMCs utilized to sign up for websites and other marketing programs. Although the instructions do not expressly address whether any HMC was required to enroll in a program, there are certainly indications in the materials that the programs were optional:

- The instructions for pre-2011 websites (Defts' Ex. D, p. 8) provide for how HMCs may cancel their websites: "You may cancel your website at any time." The ability to cancel is inconsistent with the notion of the websites being necessary.

- Similarly, the post-2011 website instructions (Defts' Ex. E, p. 4) provide that the HMCs "There is no fee to cancel an HMC website."

- The instruction for the Fastmail program (Defts' Ex. F, p. 1), an employee who wishes to sign up must check a box next to the sentence: "I would like to participate in Fastmail mailings," indicating that the choice is the HMC's whether to participate.

- The e-mail with instructions to sign up for the Mortgage Marketing Guide (Deft's Ex. 6, p. 2) indicates it was sent only to those HMCs who "expressed interest in signing up" for the program. The e-mail also confirms that HMCs can cancel and that there is a 30-day money back guarantee.

- The sign-up form for the e-business card *Deft's Ex. 7, p. 4) states that the HMC "may cancel at anytime (sic)."

Again, none of the formal company documents indicates that the programs are necessary and all of them, at least implicitly, suggest that HMCs have an option whether to enroll.

### E. Plaintiffs Complete Lack of Evidence from Other California HMCs

Amazingly, Plaintiffs have not included a single declaration from another HMC in support of their motion. This case has been litigated as a class action for nearly a year, Plaintiffs

-- 6 --

SMRH:407223901.2                                                   DEFS' OPP TO MOT. FOR CLASS CERTIFICATION
Case No. 3:11-CV-0922-L-MDD

have access to multiple other HMCs, and they could not persuade a single HMC, even a former employee, to attest that the HMC was coerced to get a website or enroll in a marketing program.

III. **LEGAL ARGUMENT**

    A. **The Primary Issue, Which Is Highly Individual, Will Be Whether Each HMC Reasonably Felt Coerced to Spend Money on a Marketing Program**

        1. The Elements of a Claim Under Labor Code Section 2802 Include Proof That an Expense Incurred Was Necessary Rather Than Optional

As explained in Defendants' motion to deny class certification, the elements of a Labor Code Section 2802(a) claim include an element that "the expenditures or losses were ***necessary***." *Cassady v. Morgan, Lewis & Bockius*, 145 Cal. App. 4th 220, 230 (2006) (emphasis added). "[A]scertaining what was a necessary expenditure will require an inquiry into what was reasonable under the circumstances." *Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 58 (1991). Where an employee's expenditure is voluntary rather than necessary to perform the job duties, the employer is not required to reimburse the expense. *See Novak v. The Boeing Company,* 2011 U.S. Dist. LEXIS 83031, * 7-10 (C.D. Cal. Jul. 20, 2011).

In its motion, Defendants discussed *Novak* and how it demonstrates the distinction between necessary and optional expenses. In that case, because the Court found that employees had the option whether to participate in the virtual worker program, Section 2802 did not require the employer to reimburse expenses generated as a result of working within that program:

> "As a matter of law, additional internet and phone expenses incurred by Boeing's virtual workers ***who have elected to participate in a voluntary program*** permitting them to work from home are not "necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

*Id.* at *8-9 (emphasis added). Accordingly, to the extent an HMC fails in any individual case to prove that he reasonably believed he was required to participate in a program, then the HMC's individual 2802 claim must fail.

2. <u>The Predominant Individualized Issue Will Be Whether Any HMC
Voluntarily Signed Up for a Website or Other Marketing Program</u>

Defendants summarized the evidence in the record showing that the question of whether any HMC was forced to spend money on a website or other marketing program is individualized. Once again, such evidence includes the following:

(1) A declaration from the President of HSL attesting that there has never been a policy requiring HMCs to have a website or participate in any marketing program and no HMC has ever been disciplined for refusing to participate.[8]

(2) Declarations from a sampling of ten (10) HMCs attesting that they always understood the websites to be optional, including two employees who worked without a website without experiencing any discipline or other adverse consequence.[9]

(3) These declarations also reflect that these HMCs either never participated in any marketing programs or did so for only a portion of their employment, and the HMCs were never disciplined for non-participation.

(4) The declarations also indicate that several HMCs who signed up for a website or marketing program did so because the HMCs expected to (and did) receive value from the website/marketing program greater than the cost the HMCs paid for the service.

(5) Data reflecting which specific HMCs participated in the website and other marketing programs. The data shows that participation has always been less than 100% and for some programs was well below 50%.[10]

(6) Copies of the instructions HMCs received when they enrolled for a website or marketing programs, which provide that the HMCs can cancel their participation at no cost—a concept inconsistent with participation being necessary.[11]

---

[8] Johnson Dec. ¶¶ 4, 6.

[9] See summary of Declarations at pages 6 and 7. Full declarations are in the concurrently filed Appendix of Evidence.

[10] Whartman Dec. ¶¶ 4-12, Ex. I (Data on HMC participation in different programs).

[11] Whartman Dec. ¶¶ 14-18, Exs. D-H.

-- 8 --
SMRH:407223901.2     DEFS' OPP TO MOT. FOR CLASS CERTIFICATION
Case No. 3:11-CV-0922-L-MDD

(7) Deposition admissions from Plaintiff Mark Buchanan that he never had a website and never spent any of his money on the marketing programs at issue.[12]

As summarized in the Facts section above, Plaintiffs have countered only with e-mails from Danny Valentini and his clerical assistant to an unknown subset of San Diego HMCs noting that, as late as mid-2009, many HMCs were not enrolled for websites or other marketing programs, and encouraging more HMCs to participate. While it is possible that a particular HMC could prove that, in his case, he received communications from his manager that led him reasonably to believe he had to get a website or participate in a marketing program, there is no *collective* proof to establish such an outcome across the entire class.

On the contrary, the evidence in the record reveals material variation among different HMCs. Perhaps one HMC's manager told that HMC that the HMC needed to have a website. Perhaps a different HMC working for the same manager voluntarily signed up for a website because he thought it was a good value and never discussed with his manager whether it was necessary. Perhaps another HMC contends his manager forced him to do it, but the manager disputes it, and a credibility dispute arises as to whether the particular HMC was coerced or merely encouraged to participate. Each of these disputes may result in a different liability outcome from the different HMCs. There are many other possible variations on the individual facts, and the only way to resolve these individualized disputes is with individualized evidence. In such cases where individualized defenses cause an action to devolve into a mini-trial for each class member, class certification is simply inappropriate.

In Defendants' motion to deny certification, they analogized this case to *Howard v. Gap, Inc.,* 2009 U.S. Dist. LEXIS 105196 (N.D. Cal. Oct. 29, 2009). There, as here, there was evidence of individual communications to some employees that they were required to spend money on a company initiative (there, it was to purchase Gap clothing to wear at work). There, as here, Plaintiffs lacked evidence of a company policy that made participation in the initiative

---

[12] Shaw Dep. 280:2-11, 283:3-284:13; Buchanan Dep. 277:24-278:16.

necessary. Furthermore, there as here, the employer submitted declarations from employees who testified they did not understand participation to be necessary. On such a record, the court held that class certification was inappropriate:

> There was no common script. ***Each class member would have his or her own individual story to tell***. This goes to liability, not damages. Clearly individual issues would overwhelm any common issues. This is a show stopper.

*Id.* at * 12-13 (emphasis added); *see also Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 642-43 (N.D. Cal. 2010) (denying certification for lack of collective proof in a case where employees allegedly subject to a common practice forcing them to buy T-shirts contrary to company written policy); *Madrigal v. Tommy Bahama Group, Inc.*, USDC C.D. Cal. Case No. CV 09-08924 SJO (C.D. Cal. Jun. 27, 2011)(citing *Howard* and denying certification of claim that employees were required to purchase clothing in violation of Labor Code Section 2802).

Since the filing of the motion to deny class certification, the California Court of Appeal has published a decision, *Morgan v. Wet Seal, Inc.*, ___ Cal. App. 4th ___, Case No. A133590 (Nov. 7, 2012),[13] that adopts *Howard v. Gap* as valid precedent and uses it to deny class certification in another case where the plaintiffs contended that Wet Seal managers required retail store employees to purchase Wet Seal clothing to wear at work in order to be suitably fashionable to meet the company image. In fact, the plaintiffs contended that their managers told them at the outset of their employment "that the 'Company' required employees to dress in Wet Seal merchandise 'at all times.'" Their story was supported by declarations of 51 other former employees. By contrast, the defendants submitted declarations from other employees attesting that they had never been told to purchase Wet Seal clothing and had no understanding doing so was mandatory. On that record the trial court denied class certification, which the Court of Appeal affirmed, explaining how this case is substantively identical to the *Howard* case:

---
[13] The slip opinion is the only version available presently, and it can be accessed online at http://www.courts.ca.gov/opinions/documents/A133590.PDF.

> "The *Gap* decision is analogous to the present case and the trial court did not abuse its discretion by so stating. Here, as in *Gap*, there is no class-wide method of proof with regard to the fundamental liability questions at the heart of both sets of plaintiffs' claims. Wet Seal's written polices do not require employees to . . . purchase and wear Wet Seal clothing as a condition of employment . . . . All of the named plaintiffs submitted declarations which establish that their own claims are based on oral instructions from their specific manager(s). Furthermore the declarations of putative class members submitted by both plaintiffs and Wet Seal show that employees were told different things about the challenged policies and that many of them were not told that they were required to purchase and/or wear Wet Seal merchandise. . . ."

*Id.* at p. 22 (of slip opinion).

The Court further notes that, even though the *Morgan* plaintiffs contended that the company had a written policy on workplace dress that could be interpreted as requiring purchase of Wet Seal clothing to wear on the job, the policy does not state that expressly and could also be interpreted as merely encouraging the purchase of Wet Seal clothing, leading to individualized issues of what people were told and understood:

> "The written policies are not substantial evidence that Wet Seal engaged in the allegedly illegal policies; arguably, they support the contrary conclusion. Furthermore, the anecdotal evidence regarding Wet Seal's application of its dress code . . . is not substantial evidence of a class-wide practice that could be used as a common method of proving liability. To the contrary, that evidence, much of which was submitted by plaintiffs themselves, reinforces the conclusion that Wet Seal's liability to putative class members will have to be decided on an individualized basis."

*Id.* at 23.

There is no way meaningfully to distinguish *Morgan and Howard* from the instant case. The principles are identical. If certification was inappropriate in those cases, the same is true here. Accordingly, Defendants respectfully submit that class certification is inappropriate here.

### B. A Second Important Individualized Issue Will Be Whether Individual HMCs Received More Value For Their Expenditures Than They Expended on Websites or Marketing Programs

Defendants also explained in their motion that liability under Labor Code Section 2802 requires the employee to suffer a "loss" that the employer must "indemnify." *See Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1023-24 (2011)("indemnify" entails "reimbursement for losses."); *see also Howard,* 2009 U.S. Dist. LEXIS 105196 at *15-16 ("It would be very difficult, if not impossible to determine, on class-wide proof, whether all employees were harmed by some Gap managers' instructions [to buy Gap clothes]."). Many HMCs actually made money by participating in the programs at issue in this lawsuit. As Danny Valentini wrote in an e-mail that Plaintiffs submitted as Exhibit V: "Yes it costs money!! But I think it may have already cost you and I more not doing it."

Unlike a routine business expense case where an employee must incur a loss, such as an employee who drives his car for work, which depreciates the car and requires expenditures for gas, the marketing programs at issue provide the HMC a service in return for the HMCs payment that may actually generate additional money for the HMC. In other words, having a website may generate additional commissions that exceed its cost of $40 per month.

The value of the service obtained through a marketing program can vary widely from one employee to another. For example, Messrs. Buchanan and Shaw testified that they obtained no value whatsoever from their website because their business model was built on referrals from Prudential agents rather than internet traffic.[14] By contrast, HSL has submitted declarations from other HMCs who have attested to the great value they obtained from websites and marketing programs that exceeded the amounts they paid for the services. The individualized variation as to

---

[14] Buchanan Dep. 281:10-282:24.

-- 12 --
SMRH:407223901.2   DEFS' OPP TO MOT. FOR CLASS CERTIFICATION
Case No. 3:11-CV-0922-L-MDD

whether an HMC experienced more value for the website or marketing program than the HMC expended is another individualized issue that weighs against class certification. *Howard,* 2009 U.S. Dist. LEXIS 105196 at *15-16.

In sum, because many employees received greater value in return than they expended on websites or marketing programs, and because there is no easy way to determine which employees obtained such benefits and which did not, individualized issues necessarily predominate and preclude class certification.

### C. The Cases Plaintiffs Cite In Support of Class Certification of Expense Reimbursement Claims are Readily Distinguishable

Plaintiffs cite some cases for the general proposition that Labor Code Section 2802 cases can be properly certified as class actions. While Defendants agree that *some* cases arising under Section 2802 can be proven through collective proof, this case is not one of them, and the cases Plaintiffs cite are readily distinguishable.

First, Plaintiffs cite *Estrada v. FedEx Ground Package Systems, Inc.,* 154 Cal. App. 4th 1 (2007) as an example where a Section 2802 claim was certified. But the issue in *Estrada* was whether package delivery drivers were employees or independent contractors. It was undisputed that these drivers had necessary business expenses and that FedEx Ground did not reimburse them, but the obligation to reimburse extends only to employees not independent contractors. By contrast, there is an individual issue here whether the expenses at issue are necessary or optional. That is why *Estrada* was a proper class action and this case is not. *See also Morgan*, slip opinion at p. 23 (similarly distinguishing *Estrada*).

Next, Plaintiffs cite *Gattuso v. Harte-Hanks Shoppers*, 42 Cal. 4th 554, 575 (2007). The issue there was whether the compensation system for outside salespersons that paid them a heightened commission rate as compared to inside salesperson served to compensate them for their necessary mileage expenses. The case does not even address whether class certification was proper, but rather whether an employer may reimburse mileage expenses through a heightened commission rate—a proposition with no equivalent in this case. As such, *Gattuso* is of no help to Plaintiffs.

-- 13 --

Next, Plaintiffs cite *Employment Development Department v. Superior Court*, 30 Cal. 3d 256 (1981) a case that does not address expense reimbursement at all. Rather, it addresses whether certain class actions against the government are proper. To the extent it stands for the proposition that mere variations in damages do not preclude class certification, that proposition is of no help to Plaintiff. As the California Court of Appeal recently explained in *Ayala v. Antelope Valley Newspapers, Inc.*, __ Cal. App. 4th ___, 2012 Cal. App. LEXIS 1083 (Oct. 17, 2012), this rule about variations in damages is inapplicable where numerous members of the putative class have no damages at all. That is a variation in **liability** not just damages: "While plaintiffs are correct that the need for individual determinations of damages does not preclude class certification, the issue here is the need for individual determination of each carrier's *entitlement* to damages, which is a proper ground for denying class certification." *Id.* at p. *33-34, n. 11.

Finally, Plaintiffs cite *Wilson v. Kiewit Pacific Co.*, 2010 U.S. Dist. LEXIS 133304 (N.D. Cal. Dec. 6, 2010) for the proposition that whether expenses are necessary "is a common question that is better addressed in a motion for summary judgment." But in that case, the dispute was whether the employer had a policy in which it refused to reimburse business mileage for off-site meeting employees were required to attend. On the record before that court, the court could rationally conclude that whether the mileage was necessary was common for the entire class. *Id.* at *23. The record here does not support such a conclusion but rather shows great variation as to whether HMCs understood the expenses to be necessary or optional and whether the HMCs suffered a loss or a gain from enrolling in the programs.

Accordingly, none of the cases Plaintiffs cite support class certification here. Rather, class certification should be denied because of predominant individualized issues.

### D. Plaintiffs Are Also Inadequate Class Representatives

A proposed class representative can be inadequate if he is pursuing individual claims that do not benefit the class he seeks to represent. This inadequacy concept typically arises when the class representative is subject to a unique defense that threatens to distract him from focusing on the class issues. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (and

cases cited therein). As the Ninth Circuit explained, in that context "a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.*

The same reasoning applies where, as here, the class representatives are more focused on pursuing individual claims that they have joined together in the complaint with their class claims. The instant action was *not* initially filed as a class action, but rather Plaintiffs Shaw and Buchanan brought virtually identical single-plaintiff cases (later consolidated) asserting that they had each been misclassified as exempt, and denied overtime pay and meal periods as a result.[15] It was only in January 2012, many months after this action was initiated that Plaintiffs' decided to tack on class claims to their exemption case. Since that time, they have abandoned most of the class claims, and now are pursuing only the class claims for unreimbursed marketing expenses.

Plaintiffs' distraction is evidenced by their failure to litigate the class claims adequately. They have not retained an expert to address class issues at all. They have not submitted any declarations from other class members to support their claims of classwide coercive marketing expenditures. Moreover, Plaintiff Buchanan never even had a website or enrolled in any of the marketing programs at issue, giving him no interest in the class claims whatsoever.

Accordingly, Plaintiffs Buchanan and Shaw are inadequate class representatives who are ill suited to defend the interests of the HMCs they purport to represent. None of those putative class members has any interest in Plaintiffs' primary overtime or meal period claims, yet that is plainly where Plaintiffs have invested their time and effort in litigating this case. This lack of focus on class interests provides a separate and independent reason to deny class certification.

---

[15] Plaintiffs cannot pursue overtime and meal period claims on a class basis because HSL settled those claims on a class basis in a separate action, *DeBlanco v. HomeServices Lending LLC*, C.D. Cal. Case No. 2:11-cv-08254-SJO, that was initiated before the filing of their action. Plaintiffs opted out of that settlement to pursue their own exemption claims individually, but are the *only* remaining HMCs who have not resolved their exemption claims against HSL.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court enter an order denying class certification.

DATED: November 19, 2012

                                        SHEPPARD MULLIN RICHTER & HAMPTON LLP

                                        By     /s/ Thomas R. Kaufman
                                                              Thomas R. Kaufman
                                                              Hayley S. Grunvald

                                                              Attorneys for Defendants
                                           HOMESERVICES LENDING LLC and
                                       DOHERTY EMPLOYMENT GROUP, INC.