1  THOMAS R. KAUFMAN, Cal. Bar No. 177936
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2  tkaufman@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
3  Los Angeles, California 90067-6017
   Telephone: 310-228-3700
4  Facsimile: 310-228-3701

5  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   HAYLEY S. GRUNVALD, Cal. Bar No. 227909
6  hgrunvald@sheppardmullin.com
   501 West Broadway, 19th Floor
7  San Diego, California 92101-3598
   Telephone: 619-338-6500
8  Facsimile: 619-234-3815

9  Attorneys for Defendants
   HOMESERVICES LENDING LLC and
10 DOHERTY EMPLOYMENT GROUP, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BUCHANAN, individually and on behalf of all others similarly situated; BRIAN SHAW, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>HOMESERVICES LENDING LLC, Doing Business As HOMESERVICES; and DOHERTY EMPLOYMENT GROUP, INC.<br><br>    Defendants. | Case No. 3:11-CV-0922-L-MDD<br><br>Assigned to Hon. James M. Lorenz<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION**<br><br>DATE:    December 3, 2012<br>TIME:    10:30 a.m.<br>CRTRM:  14<br><br>[Complaint Filed April 29, 2011] |

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF REPLY ........................................................ - 1 -

II. LEGAL ARGUMENT ................................................................................................ - 2 -

    A. Plaintiffs Cannot Refute The Existence of a Predominant Individualized Liability Issue Of Whether The Expenses at Issue Were "Necessary" ................ - 2 -

        1. Plaintiffs Fail to Refute That Employers Need Not Reimburse Optional Business Expenses Under Labor Code Section 2802 ................ - 2 -

        2. *Morgan v. Wet Seal* Is a Closely Analogous Precedent That Should Lead the Court to Deny Certification Here ................................................ - 3 -

    B. Plaintiffs Fail to Refute That Employees Must Experience an Economic Loss to Be Entitled to "Indemnification" Under California Law ........................ - 8 -

    C. Plaintiffs Have Failed to Establish That a Labor Code Section 221 Claim Could Properly Be Certified Here ....................................................................... - 9 -

III. CONCLUSION ........................................................................................................ - 10 -

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ayala v. Antelope Valley Newspapers, Inc.*
 210 Cal. App. 4th 77 (2012) ..................................................................................................8, 9

*Brinker Restaurant Corp. v. Superior Court*
 53 Cal. 4th 1004 (2012) ......................................................................................................3, 9

*Cassady v. Morgan, Lewis & Bockius*
 145 Cal. App. 4th 220 (2006) ..............................................................................................2, 1

*Howard v. Gap, Inc.*
 2009 U.S. Dist. LEXIS 105196 (N.D. Cal. Oct. 29, 2009)....................................1, 3, 4, 5, 6, 8

*Koehl v. Verio, Inc.*
 142 Cal. App. 4th 1313 (2006) ...............................................................................................10

*Morgan v. Wet Seal, Inc.*
 __ Cal. App. 4th ___, 2012 Cal. App. LEXIS 1164 (Nov. 7, 2012).......................1, 2, 3, 4, 5, 6

*Novak v. Boeing Company*
 2011 U.S. Dist. LEXIS 83031 (C.D. Cal. Jul. 20, 2011) *8-9 (C.D. Cal. December 19,
 2011) .................................................................................................................................1, 2, 3, 6

*Sciborski v. Pacific Bell Directory*
 205 Cal. App. 4th 1152 (2012) ...............................................................................................10

*Steinhebel v. Los Angeles Times Communications*
 126 Cal. App. 4th 696 (2005) ..................................................................................................9

*Zalkind v. Ceradyne, Inc.*
 194 Cal. App. 4th 1010 (2011) .................................................................................................8

Statutes

Labor Code § 221................................................................................................................1, 2, 9, 10

Labor Code § 224.........................................................................................................................2, 10

Labor Code § 2802..........................................................................................................1, 2, 3, 5, 6, 8, 9, 10

Labor Code § 2804.............................................................................................................................3

# I. INTRODUCTION AND SUMMARY OF REPLY

Plaintiffs' opposition brief mischaracterizes both the law on expense reimbursement and the standards for class certification. Plaintiffs seem to believe that if they simply announce that expenses were necessary, that makes it so, and any evidence that individuals were not compelled to incur the expenses at issue is irrelevant "merits" evidence. Tellingly, Plaintiffs cite no authority to support either their construction of Labor Code Section 2802 or the purported standards for class certification that they advance.

First, Plaintiffs cannot avoid that Section 2802 requires reimbursement only of *necessary* expenses. This is evident from the plain text of the statute as well as at least three published cases (*Morgan*, *Cassady*, and *Novak*). All the authorities hold, either expressly or implicitly, that an optional expense is not a necessary expense, even if the expense is for an item that is job related. Because liability for any HMC here will turn on whether the expenses at issue were necessary or optional, and because that is an individualized issue, certification is inappropriate.

Second, Plaintiffs argue that whether it was necessary for HMCs to have a website or participate in paid marketing programs is a common rather than an individual issue. But Plaintiffs have not identified any company policy or other classwide evidence that states that HMCs must have a website or participate in a paid marketing program. Moreover, the data on actual participation shows that many HMCs worked without a website, and *most* HMCs never participated in a marketing program. There are different stories among different HMCs as to why they did or did not participate. HMCs also differ as to whether their manager ever told them that they had to participate in marketing programs (which also raises individual credibility issues). The record before the Court is materially indistinguishable from what the court faced in *Morgan v. Wet Seal* (and *Howard v. Gap*). In both cases the court denied class certification because the plaintiffs lacked collective proof of a classwide violation. The same is true here.

Third, Plaintiffs argue that a class could alternatively be certified under Labor Code Section 221 even though they have made no showing whatsoever that even one class member was compelled to have deductions taken from his wages in a manner that would violate the statute (i.e., without an express authorization). Instead, the record shows that to the extent any

HMC had deductions taken from his commissions for websites or other marketing expenses, it was only after the HMC expressly authorized such deductions as part of the enrollment process, rendering any deduction to pay for marketing expenses lawful under Labor Code Section 224. Because Plaintiffs do not even attempt to make a showing of a violation of Section 221, there would be no purpose whatsoever to certify such a claim and Plaintiffs would be inadequate to serve as class representatives in any event.

In the final analysis, this Court is faced with a record where the Plaintiffs have made various arguments about the law and the facts that are unsupported by any admissible evidence or authority (not even by one declaration from a putative class member). By contrast, Defendants have cited to controlling and analogous cases concerning the standards for expense reimbursement and class certification and have pointed to an ample body of evidence in the record reflecting the existence of predominant individualized issues. On this record, Defendants respectfully submit that the only proper course for this Court is to deny class certification.

## II. LEGAL ARGUMENT

### A. Plaintiffs Cannot Refute The Existence of a Predominant Individualized Liability Issue Of Whether The Expenses at Issue Were "Necessary"

#### 1. Plaintiffs Cannot Refute That Employers Need Not Reimburse Optional Business Expenses Under Labor Code Section 2802

Plaintiffs cannot dispute that Labor Code Section 2802 requires indemnification of employees *only* for their "necessary" expenses. The text of the statute discusses reimbursement of expenses "necessarily incurred." Furthermore, multiple cases confirm that the expense reimbursement requirement is limited to ***necessary*** expenses. *See Morgan v. Wet Seal, Inc.*, __ Cal. App. 4th ___, 2012 Cal. App. LEXIS 1164, *28 (Nov. 7, 2012) ("individualized inquiries would be necessary in order to determine whether any given purchase by an employee constituted a 'necessary expenditure'"); *Cassady v. Morgan, Lewis & Bockius*, 145 Cal. App. 4th 220, 230 (2006) (identifying an essential element of a Section 2802 claim as whether "the expenditures or losses were necessary."); *Novak v. Boeing Company*, 2011 U.S. Dist. LEXIS 83031 (C.D. Cal. Jul. 20, 2011) *8-9 (C.D. Cal. December 19, 2011) (declaring business phone expenses incurred by workers non-reimbursable because expenses incurred as a result of

1 participation in a voluntary program "are not necessary expenditures.").

2 Although Plaintiffs argue that the proposition that "employers are not required to reimburse expenses that are voluntary rather than necessary" is "neither supported by statutory law or the *Novak* case," they cite exactly zero statutes and cases to support their argument. Instead, they raise only the irrelevant point that Labor Code Section 2804 precludes employees from contractually waiving their right to reimbursement under Section 2802. (Opp., pp. 3-4). That point is immaterial because Defendants are not arguing that anyone waived their right to reimbursement. Rather, Defendants are arguing that the right to reimbursement attaches only to expenses that are necessary. In other words, an employee has no right to reimbursement of optional expenses even if he cannot waive the right to reimbursement of necessary ones.

The issue of what the actual elements are for a Section 2802 claim is important to the class certification question. This is because, in deciding class certification, the Court must consider the elements of the claims at issue and evaluate whether the essential elements can be proven with collective proof. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1024 (2012). In carrying out that exercise, the Court must consider whether Plaintiffs can prove the essential element of a Section 2802 claim that the expenses at issue were "necessary" across the class using collective proof. As explained below, Plaintiffs cannot meet this burden.

### 2. *Morgan v. Wet Seal* Is a Closely Analogous Precedent That Should Lead the Court to Deny Certification Here

*Morgan* was not published until after Defendants filed their motion to deny certification, but Plaintiffs correctly predicted that Defendants would rely upon it here. (Opp. pp. 11-12). Much like *Howard v. Gap, Inc.*, 2009 U.S. Dist. LEXIS 105196 (N.D. Cal. Oct. 29, 2009), *Morgan* contains instructive discussions on (1) when expense reimbursement cases present predominant individual issues and (2) differences between a proper and improper consideration of factual "merits" disputes in connection with deciding class certification.

It is important to emphasize that, as in *Morgan*, Plaintiffs have not identified any company policy stating either that websites were mandatory or that HMCs had to participate in marketing programs. They have pointed to individual e-mails and other documents that address HMC participation in various marketing programs (none of which is properly authenticated), but

- 3 -
SMRH:407385598.6                        DEFENDANTS' REPLY BRIEF IN SUPPORT OF
                                        MOTION TO DENY CLASS CERTIFICATION
                                        Case No. 3:11-CV-0922-L-MDD

none purports to announce a rule that all HMCs must participate in any program.

On the contrary, the undisputed participation data in the record shows that *most* California HMCs never participated in any of the marketing programs—a fact impossible to square with the allegation that participation was mandatory across California. The data also shows that a substantial minority of HMCs worked for years without a website, never got a website, or canceled their website in the midst of their employment as HMCs.[1] In addition, ten HMCs have submitted sworn declarations that their branch managers never told them that it was mandatory for them to get a website or participate in a marketing program and that they knew it was optional.[2] Despite this evidence, Plaintiffs simply assert that getting a website and participating in a program were "necessary" expenses and argue that any dispute on that point is a merits dispute that cannot be considered now. Plaintiffs are completely mistaken.

*Morgan* rejects the very argument that Plaintiffs are advancing. As here, the *Morgan* plaintiffs pointed to multiple ambiguous documents that could be construed either as encouraging or requiring the employees to purchase a product for use at work (fashionable clothing there, and websites and marketing programs here). As here, the *Morgan* plaintiffs put into evidence e-mails where managers (1) expressed concern that employees were not purchasing the products and (2) encouraged the purchase of the products (e-mails bemoaning how employees were underdressed at work there, and e-mails seeking to increase participation in website and marketing programs here). As here, the *Morgan* plaintiffs argued that any evidence that the expenses at issue were encouraged rather than required was an improper "merits" issue that could not be considered at class certification. In rejecting those arguments, the *Morgan* court explained that merits *must* be considered enough to determine whether resolving the merits as to different class members will raise individualized issues.

The *Morgan* court went on to explain how the trial court properly considered *Howard v. Gap* to be an analogous precedent. The trial court properly determined, as in *Howard*, that

---

[1] Declaration of Tracy Whartman ("Whartman Dec.") ¶¶ 14-18, Exs. D-H.
[2] *See* Declarations of Steve Arnott, Curtis Fox, Mark Johnson, Rick Lombardo, Michael Moses, Greg Parker, Tasneem Sheree, Cleveland Smith, Diane Shankweiler and Lillian Soto in Defendants' Appendix of Evidence.

SMRH:407385598.6 - 4 -
DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO DENY CLASS CERTIFICATION
Case No. 3:11-CV-0922-L-MDD

proving whether any class member was required to purchase clothing for use at work was necessarily an individualized issue in light of the lack of a single company policy that expressly required the purchase of such clothing for work:

> "Appellants face the same problem that defeated the class certification motion in *Gap*. They have alleged that there are two illegal policies that apply to the class but they failed to produce substantial evidence of a companywide policy which can be used as a method of establishing liability. The written policies are not substantial evidence that Wet Seal engaged in the allegedly illegal policies; arguably, they support the contrary conclusion. Furthermore, the anecdotal evidence regarding Wet Seal's application of its dress code and travel expense reimbursement policy is not substantial evidence of a classwide practice that could be used as a common method of proving liability. To the contrary, that evidence, much of which was submitted by plaintiffs themselves, reinforces the conclusion that ***Wet Seal's liability to putative class members will have to be decided on an individualized basis.***"

*Id.* at *40 (emphasis added).

In concluding that individualized issues predominated, the trial court in *Morgan* identified various individualized issues that would need to be resolved to establish liability under Section 2802 on a theory that class members were required to purchase clothing: "(1) what, if anything, the employee was told by his or her store manager regarding purchasing Wet Seal clothing or wearing Wet Seal clothing to work; (2) if such a discussion occurred, when and with whom the employee had that discussion; (3) how the employee interpreted that discussion; (4) whether the employee's interpretation was reasonable; and (5) whether the employee then purchased Wet Seal clothing to wear to work pursuant to that discussion." *Id.* at 26. The court of appeal deemed this analysis proper. All of those same individual questions apply here.

The participation data Defendants submitted shows that participation in website and marketing programs was far from universal. Declarations from HMCs reveal that numerous HMCs were ***never*** told by managers they had to spend money enrolling in websites or marketing programs. While Shaw and Buchanan contend that they were told they had to participate, Valentini denies it, and Buchanan undisputedly never participated. The divergence between Valentini's alleged command to participate and Buchanan's non-participation raises individual credibility issues about exactly what management told him and told different HMCs.

Furthermore, to the extent employees received encouragement in the form of Valentini e-mails exhorting the benefits of various marketing programs, that raises the individualized issues

of "how the employee interpreted that [e-mail]" and "whether the interpretation was reasonable" (i.e., whether the employee reasonably understood that participation was mandatory rather than just helpful to the HMC's business). Furthermore, to the extent HMCs enrolled in a marketing program or signed up for a website, there is an individualized issue as to whether that decision was entirely voluntary (e.g., because the employee thought it would earn him or her more money) or was instead the product of managerial "encouragement."

Plaintiffs weakly attempt to distinguish *Morgan* and *Howard* by contending that "clothing inherently can be worn outside of work, and therefore [was] not a necessary business expense." (Opp. pp. 11-12). But that principle appears nowhere within *Morgan* or *Howard* and does not even make sense. Implicit in *Morgan* was the premise that, if a store manager, in fact, ordered that an employee purchase a fashionable Wet Seal shirt to wear at work in order to fit the company culture, the purchase would be a necessary business expense for purposes of Section 2802. It would be immaterial that the mandatory expense would have non-work applications.

Conversely, when employees expended money to make business calls from home in *Novak,* that business expenditure was not reimbursable because working from home rather than the office (where phones are free) was optional. In sum, the decisions in *Morgan* and *Howard* cannot be explained merely on the ground that they involved clothing purchases. Rather, their outcomes turned on the issue of whether it could be collectively proven that a business-related expense was mandatory rather than optional. That principle applies here just as strongly.

Furthermore, Plaintiffs have failed to refute that this issue will be individualized here. Defendants identified evidence in the record showing that liability here will be individualized:

(1) An unrebutted declaration from the President of HSL attesting that there has never been a policy requiring HMCs to have a website or participate in any marketing program and no HMC has ever been disciplined for refusing to participate.[3]

(2) Declarations from a sampling of ten (10) HMCs attesting that they always understood the websites to be optional, including two employees who worked without a website without

---

[3] Johnson Dec. ¶¶ 4, 6.

1  experiencing any discipline or other adverse consequence.[4]

(3) These declarations also reflect that these HMCs either never participated in any marketing programs or did so for only a portion of their employment, and the HMCs were never disciplined for non-participation.

(4) The declarations also indicate that several HMCs who signed up for a website or marketing program did so because the HMCs expected to (and did) receive value from the website/marketing program great than the cost the HMCs paid for the service.

(5) Data reflecting which specific HMCs participated in the website and other marketing programs. The data shows that participation has always been less than 100% and for some programs was well below 50%.[5]

(6) Copies of the instructions HMCs received when they enrolled for a website or marketing programs, which provide that the HMCs can cancel their participation at no cost—a concept inconsistent with participation being mandatory.[6]

(7) Deposition admissions from Plaintiff Mark Buchanan that he never had a website and never spent any of his money on the marketing programs at issue.[7]

Plaintiffs attempt to introduce various e-mails, budgets and Powerpoints, none of which amount to a policy that all HMCs must follow. Furthermore, Plaintiffs failed to authenticate any of these documents, rendering them inadmissible in any event.[8] Beyond this offering, Plaintiffs argue that Defendants' submission of evidence concerning whether the expenses at issue were necessary somehow goes just to damages. In truth, it does not, but rather goes to show that the only way to prove this case will be to consider each HMC's circumstances individually. Calling every member of the class to testify would be unmanageable and is an exercise flatly inconsistent with the notion of class action litigation.

---

[4] See summary of Declarations at pages 6 and 7. Full declarations are in the concurrently filed Appendix of Evidence.
[5] Whartman Dec. ¶¶ 4-12, Ex. I (Data on HMC participation in different programs).
[6] Whartman Dec. ¶¶ 14-18, Exs. D-H.
[7] Shaw Dep. 280:2-11, 283:3-284:13; Buchanan Dep. 277:24-278:16.
[8] Plaintiffs also never disclosed any of them as evidence they would rely upon as required by Rule 26. Indeed, they took depositions of Todd Johnson, Danny Valentini, and Mike Reza, any one of whom they could have asked to authenticate these documents. Accordingly, the documents should be excluded from evidence.

### B. Plaintiffs Fail to Refute That Employees Must Experience an Economic Loss to Be Entitled to "Indemnification" Under California Law

Plaintiffs falsely contend that Defendants have mischaracterized cases in support of the argument that whether or not HMCs financially benefitted by an amount greater than the cost they paid for marketing programs raises another predominant individualized issue. Plaintiffs are again mistaken, as the issue is both highly relevant and individualized.

Defendants cited *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1023-24 (2011) for the proposition that California law construes the term "indemnify" as to provide reimbursement for ***losses***. Although *Zalkind* is not a Section 2802 case *per se*, it construes the very word that appears in Section 2802, "indemnify." Assuming the term "indemnify" has the meaning that other California courts have ascribed to the term in other California statutes, then the duty to indemnify applies only when the person seeking indemnity has suffered some kind of loss. Plaintiffs do not cite any authority that suggests that somebody who has suffered no loss at all can nonetheless receive "indemnification" under Section 2802 or any other indemnity statute.

On that basis, Defendants explained in their moving papers that whether an HMC experienced a loss or a gain from using a website or enrolling in a marketing program would turn on whether that employee gained more in heightened business and resulting commissions than the employee paid for the marketing program. Defendants contrasted the testimony of Brian Shaw, who says he received no value from his website, with that of the declarants whose declarations supported Defendants' motion to deny certification. Defendants also noted that the court in *Howard v. Gap* indicated that an employee who received more in value from purchasing discounted Gap clothing than he spent would not have a claim for damages:

> "As to damages, whether there is a policy or not, plaintiff's claims would still require an inquiry into the variety of reasons each employee may have purchased Gap clothing. It could have been to wear it during non-working hours, as gifts for their family, and a host of other possibilities. Such purchases would not fall under the claims at issue and thus would not support damages***.*** It would be very difficult, if not impossible to determine, on class-wide proof, ***whether all employees were harmed by some Gap managers' instructions***."

*Howard,* 2009 U.S. Dist. LEXIS 105196 at *15-16 (emphasis added).

Finally, Defendants cited *Ayala v. Antelope Valley Newspapers, Inc.*, 210 Cal. App. 4th

77 (2012) for the proposition that the existence of some putative class members who experienced a loss and others who experienced none as a result of the challenged practice constitutes a ground not to certify a class: "While plaintiffs are correct that the need for individual determinations of damages does not preclude class certification, the issue here is the need for individual determination of each carrier's *entitlement* to damages, which is a proper ground for denying class certification." *Id.* at 93, n. 11. Like many of the proposed class members in *Ayala*, HMCs who made money by participating in marketing programs have no entitlement to damages.

All of these authorities support the argument that certification is inappropriate here. Plaintiffs, by contrast, have cited no authority stating that the value an employee receives from an expenditure made on a business related endeavor is irrelevant to the analysis under Section 2802. Given the absence of any authority to refute Defendants' position, Defendants respectfully submit that the individualized question of whether employees gained financially as a result of obtaining a website or participating in a marketing program is an individualized issue that provides a valid alternative basis to deny class certification.

### C. Plaintiffs Have Failed to Establish That a Labor Code Section 221 Claim Could Properly Be Certified Here

Plaintiffs do not dispute that a court deciding class certification must examine the essential elements of the claims *that will be resolved at trial* and determine whether those elements are capable of collective adjudication. *See Brinker*, 53 Cal. 4th at 1024 ("To assess predominance, a court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged."). This principle is relevant here because an evaluation of the theory of wrongdoing that Plaintiffs assert here reveals it arises under Labor Code Section 2802, not Labor Code Section 221.

As Defendants explained in their moving papers, the Legislature enacted Labor Code Section 221 and its related provisions to proscribe secret deductions or "kickbacks" that made it appear as if an employer was paying wages in accordance with an applicable contract or statute but in fact paying less. *Steinhebel v. Los Angeles Times Communications*, 126 Cal. App. 4th 696, 707 (2005). California law does not, however, generally prohibit taking after-tax deductions from commissions to pay for services provided to employees. Where the deductions

are expressly authorized—as all the deductions that took place here were—they are entirely lawful. *See generally Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1337-38 (2006).

Here, Plaintiffs do not even assert that deductions were taken from their commissions to pay for marketing programs without their written authorization. Instead, they argue that Defendants had an obligation to repay them the cost as a necessary business expense—a Section 2802 theory and not a Section 221 theory. Nothing about the arrangement resembles a kickback. Rather, it is simply a convenient method of paying for a service. While there may be issues arising under Labor Code Section 2802 where the employer is legally obligated to bear the cost of a particular service or product, the practice here simply does not raise any issues under Section 221.[9] Accordingly, Section 221 is immaterial to the class certification question.

Indeed, given Plaintiffs' lack of evidence to dispute that the deductions at issue are authorized by Section 224, one wonders what Plaintiffs hope to accomplish through certification of a Section 221 claim. Given their complete lack of a showing that there is a classwide Section 221 issue, they should be deemed inadequate class representatives on that issue.

## III. CONCLUSION

Thus, Defendants respectfully request that the Court enter an order denying certification.

Dated: November 26, 2012        SHEPPARD MULLIN RICHTER & HAMPTON LLP


/S/ THOMAS R. KAUFMAN

Thomas R. Kaufman

Attorneys for Defendants
HOMESERVICES LENDING LLC and
DOHERTY EMPLOYMENT GROUP, INC.

---

[9] Plaintiffs cited *Sciborski v. Pacific Bell Directory*, 205 Cal. App. 4th 1152 (2012) for the proposition that an employer cannot "require employees to consent to an unlawful deduction from wages," an uncontroversial but irrelevant proposition. *Sciborski* is actually a Section 301 preemption case, but the deduction at issue there was not a signed authorized deduction to pay for a service through a payroll deduction, but rather the case involved an employer refusing to pay a $30,000 commission to an employee who did all the sales work for a client but was not formally "assigned" the client as a result of a computer error—a fact pattern that is not even remotely analogous to the case at hand.

- 10 -
SMRH:407385598.6            DEFENDANTS' REPLY BRIEF IN SUPPORT OF
                            MOTION TO DENY CLASS CERTIFICATION
                            Case No. 3:11-CV-0922-L-MDD