| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARK BUCHANAN and BRIAN SHAW | ) | Civil No. 11cv0922 L (MDD) |
| | ) | |
| Plaintiffs, | ) | **ORDER DENYING PLAINTIFFS'** |
| | ) | **MOTION FOR CLASS** |
| v. | ) | **CERTIFICATION [doc. #51] and** |
| | ) | **GRANTING DEFENDANTS'** |
| HOMESERVICES LENDING LLC., dba | ) | **MOTION TO DENY CLASS** |
| HOMESERVICES; and DOHERTY | ) | **CERTIFICATION [doc. #52]** |
| EMPLOYMENT GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This putative class action stems from an action initially brought by Plaintiff Mark Buchanan on April 29, 2011 against Defendants Homeservices Lending LLC (HSL) and Doherty Employment Group, Inc.. On February 27, 2012, the Court granted a Joint Motion for Consolidation to also include Plaintiff Brian Shaw's claims against Defendants in this action. [Doc. #35] On October 11, 2012, Plaintiffs filed a Second Amended Complaint alleging three "class action claims for relief" in addition to several individual claims for violations federal and California state wages and hours laws. On October 29, 2012, Plaintiffs filed a Motion for Class Certification of the "class action claims" pursuant to Federal Rule of Civil Procedure 23 [Doc. #51], which Defendants oppose. [Doc. #58] On the same day, Defendants filed a Motion to Deny Class Certification of the alleged class action claims [Doc. #52], which Plaintiffs oppose. [Doc. #58] For the reasons that follow, Plaintiffs' motion for class certification will be denied without

prejudice and Defendants' motion to deny certification will be granted.

## I. Background

HSL is a loan originating joint venture between Wells Fargo and HomeServices of America. (Mot. to Den. at 2.) From approximately January 2008 to March 30, 2011, Plaintiff Mark Buchanan was employed by HSL as a Home Mortgage Consultant (HMC). (SAC ¶ 7.) HMCs gather financial data and other information from potential borrowers, attempt to find appropriate home mortgage loans for borrowers, and then close the mortgage transactions. (Mot. to Den. at 3.) HMCs then receive commissions on their dollar loan volume. (*Id.*)

The class action claims stem from fees paid by HMCs and HMC Jrs. for marketing programs provided by HSL including website marketing fees, e-business card marketing fees, and mailer marketing fees. (SAC ¶¶ 57-70.) The website marketing fees, including a set up charge and monthly payment, went towards a website that marketed HSL loan products and allowed applicants to submit applications online (Mot. to Certify at 3-4; Mot. to Den. at 3-4.) The e-business card program provided HMCs with virtual business cards embedded at the bottom of HMCs' e-mails with their picture, contact information, and a link to mortgage rates for a one time fee. (Mot. to Certify at 6; Mot. to Den. at 4.) The mailer marketing fees included those allegedly paid for additional mailings and postcard expenses on behalf of the HMCs. (Mot. to Certify at 7-8.) Plaintiffs allege that HSL deducted these fees from the HMC's pay stubs or charged them directly to the HMCs' credit cards. (Mot. to Certify at 3, 6, 8.)

Plaintiffs contend that deductions for these marketing items without reimbursement violated California labor laws. Plaintiffs allege that the paystub deductions and charges for the website, e-business cards, and mailings were necessary and ordinary business expenses HSL improperly deducted in violation of California Labor Code § 221. (SAC ¶ 58.) Plaintiffs further allege that HSL violated California Labor Code § 2802 by failing to reimburse the expenses to HMCs, and additionally violated California Business and Professions Code § 17200 *et seq.* by engaging in unfair business practices. (*Id.* at ¶¶ 63, 68-70.)

Plaintiffs moved to certify these claims under Federal Rule of Civil Procedure 23(a) and 23(b)(3) to proceed on behalf of the class of at least 120 HMCs and HMC Jrs. employed by HLS

since January 2008. (Mot. to Certify at 1.) The proposed class includes three sub-classes for HMCs during the period who had deductions or charges for each of the three types of marketing expenses. (*Id.* at 2-3.)

## II. Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) ("*Dukes*") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). To fit within the exception, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with [Federal Rule of Civil Procedure] 23.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Dukes*, 131 S. Ct. At 2551-52).

Rule 23 contains two sets of requirements. First, "[r]ule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 131 S. Ct. at 2550 (internal quotation marks and citations omitted). Second, "[w]here a putative class satisfies all four requirements of 23(a), it still must meet at least one of the three additional requirements outlined in 23(b)." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

Plaintiffs seek certification under Rule 23(b)(3) (*see* Mot. to Certify at 15-20), which provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> ...
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

>   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>   (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

In analyzing whether a plaintiff has met his burden to show that the above requirements are satisfied, a court is to "analyze[ ] the allegations of the complaint and the other material before [the court]," *i.e.,* "material sufficient to form reasonable judgment on each [Rule 23] requirement." *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975) (noting further that a court is to take the substantive allegations in the complaint as true); *see also Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (finding that the court may consider evidence to ascertain whether Rule 23 has been met although the evidence relates to the merits); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . [Therefore], sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.") (citations and internal quotation marks omitted). Although a court should not conduct a hearing on the merits of the plaintiffs' claims when determining class certification, *see Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1232 (9th Cir. 1996), the issue of certification will ordinarily consider both factual and legal issues of plaintiffs' claims. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978). Thus, "notwithstanding its obligation to take the allegations in the complaint as true, the Court is at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *In re Unioil Secs. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985). The class action should only be certified if, after this rigorous analysis, the trial court is satisfied all the requirements have been met. *Falcon*, 457 U.S. at 161.

///

## III. DISCUSSION

### A. 23(a) Requirements

#### 1. Numerosity

First, Rule 23(a) requires that "the class [be] so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). The numerosity requirement does not impose set limits, but requires courts to examine the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n.*, 446 U.S. 318, 330 (1980). However, "as a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough. . .and classes of 40 or more are numerous enough." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). The proposed class includes at least 120 individuals ascertainable from Defendant's employment records. (SAC ¶ 56(c).) Additionally, Defendants do not challenge that the proposed class is not numerous enough. Therefore, the putative class of at least 120 individuals satisfies the first requirement. *See Torgeman v. Collins Financial Services, Inc.*, No. 08cv1392, 2012 WL 1327824, at *10 (S.D. Cal. Apr. 17, 2012) (Bencivengo, J.) (finding that a proposed class of at least 30 individuals satisfied the numerosity requirement).

#### 2. Commonality

Second, Rule 23(a)(2) requires that "there are questions of fact and law which are common to the class." FED. R. CIV. P. 23(a)(2). Commonality requirements are less rigorous than the predominance requirements in Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates . . . [or] . . . a common core of salient facts coupled with disparate legal remedies within the class" may be sufficient. *Id.* Commonality requires that the plaintiff and class member's claims "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. Plaintiffs contend that requiring payment for HSL business expenses without reimbursement is a common factual inquiry, and liability under California Labor Code §§ 221, 225.5, 2802, and the Business and Professions Code,

relating to payment for these marketing expenses by the HMCs without reimbursement from HSL, can be resolved on a class-wide basis. (Mot. to Certify at 12.)

First, "[s]ection 2802 requires employers to indemnify employees 'for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.'" *Morgan v. Wet Seal, Inc.*, 210 Cal. App. 4th 1341, 1355 (2012); *see also Novak v. Boeing Co.*, No. SACV 09-01011, 2011 WL 9160940, at *3 (C.D. Cal. 2011) (finding that failure to reimburse work-from-home employees for phone line and internet costs did not violate § 2802 because the work-from-home program was optional and not required by the employer). Second, "[s]ection 221 prohibits an employer from collecting or receiving any part of 'wages theretofore' paid an employee." *Steinhebel v. Los Angeles Times Commc'ns.*, 126 Cal. App. 4th 696, 707 (2005). The legislature intended § 221[1] to prohibit "secret deductions or 'kickbacks' that made it appear as if an employer was paying wages in accordance with an applicable contract or statute but in fact paying less." *Id.* However, it is not unlawful to make deductions "authorized in writing by the employee." Cal. Lab. Code § 224. Lastly, Plaintiff argues that these violations constitute "unlawful, unfair or fraudulent business act[s] or practice[s]" under California Business and Professions Codes § 17200.

The crux of Plaintiffs' claims centers on the allegedly unauthorized charges and pay deductions taken for the marketing expenses and HSL's failure to reimburse all HMC's in the putative classes for those expenses. Plaintiffs contend that the commonality prong is met because Defendants required the proposed class members to pay the fees for the websites, e-business cards, and mailer forms without adequate reimbursement. (Mot. to Certify at 11-12.) Even though the company handbook and written policies do not state that the expenses are necessary and required, Plaintiffs assert that Defendants' management used "strong arm tactics" to impose the expenses on all class members. (Pl. Reply at 1.) Plaintiffs rely on e-mails and communications from management, particularly e-mails from the San Diego Branch Manager

---

[1] Section 225 provides that every person who withholds wages in violation of § 221 and other similar sections is liable for a civil penalty. Cal. Lab. Code § 225.5.

Danny Valentini to HMCs, and e-mails between the President of HSL and other management employees, in support of their argument that the charges were necessary business expenses.[2]

Defendants oppose any potential class-wide violations by stating that the fees for the marketing expenses were not required by company-wide policy making questions regarding violations of California labor codes individualized inquiries. (Def. Opp'n. at 8-9.) Defendants put forth evidence that only some HMCs enrolled in the marketing programs, Declarations from other HMCs that stated they understood the programs to be optional, and instructions sent for setup of the websites and marketing programs containing information regarding cancellation of the program at will for the HMC. (*Id.* at 8.)

Whether a business expense incurred is necessary is a question of fact that requires a look at what was reasonable under the circumstances. *See Takacs v. A.G. Edwards and Sons, Inc.*, 444 F. Supp. 2d 1100, 1124-25 (S.D. Cal. 2006) (Houston, J.); *Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 58 (1991). Although Plaintiffs attempt to assert a question common to all members of the class of whether Defendants had a policy of deducting required and necessary marketing expenses from the HMCs, the commonality prong is not satisfied because it is not a question capable of class-wide resolution. *See Howard v. Gap, Inc.*, 2009 WL 3571984, *5-*6 (N.D. Cal. 2009); *Morgan v. Wet Seal, Inc*. 210 Cal. App. 4th 1341, 1362 (2012).

In *Howard* and *Morgan*, the courts denied certification of putative classes alleged to have incurred necessary business expenditures without proper reimbursement from the employers. *Howard*, 2009 WL 3571984, at *6; *Morgan*, 210 Cal. App. 4th at 1371. Plaintiffs in both cases alleged that the respective employers required employees to purchase company clothing to wear

---

[2] Defendants objects to the introduction of these e-mails for lack of proper authentication under Federal Rule of Evidence 901(a) and for failure to disclose in discovery under Federal Rules of Civil Procedure 26(e)(1)(A) and 37(c). [Doc. 62.] Plaintiffs similarly object to admission of the declarations of Danny Valentini and Todd Johnson submitted by Defendants as well as to potential hearsay within three separate declarations. [Doc. 59-1.] However, because a motion to certify or deny certification is a preliminary procedure in which the court makes no findings of facts or ultimate conclusions on Plaintiffs' claims, "courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence ." *Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship*, No. 11cv1057, 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012) (Curiel, J.) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974)); *see also Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011).

for work and sought certification due to the employers' failures to reimburse employees for such expenses. *Howard*, 2009 WL 3571984, at *1; *Morgan*, 210 Cal. App. 4th at 1345. The employers did not have written company policy stating that employees were required to purchase the clothing items as a condition of employment. The plaintiffs attempted to rely on what managers told employees in person, through e-mail and through other communications as proof of the policy. *Howard*, 2009 WL 3571984, at *6; *Morgan*, 210 Cal. App. 4th at 1350-53. Without a clear company-wide policy, the courts found no common method to prove class-wide liability available because each individual would have his or her own story and an individual interpretation of what he or she had been told. *Howard*, 2009 WL 3571984, at *6; *Morgan*, 210 Cal. App. 4th at 1350-53.

Here, similarly, without a stated company policy requiring HMCs to enroll in the marketing programs as a condition of employment, the Court finds no common method to prove liability on a class-wide basis. Plaintiffs primarily rely on e-mails between management and from management to the employees in question, and pick and choose many persuasive lines to show the mandatory nature of the fees.[3] Plaintiff Buchanan states that in his view HSL required the marketing expenses despite his own opting out of the website program. (Buchanan Dep., 277:24-278:16.) Defendants offer evidence showing that other HMCs interpreted the marketing programs to be merely optional including declarations of several HMCs (*See, e.g.*, Shankwiler Decl., ¶ 4; Shere Decl., ¶¶ A.3-A.4), and evidence that many HMCs did not enroll in each of the three programs. (*See*, Wharton Decl., ¶ 12.)

As stated in their reply brief, Plaintiffs acknowledge that Defendants did not have a written policy mandating enrollment in the programs. (Pl. Reply at 1.) Relying on such "anecdotal evidence" without "substantial evidence of a class-wide practice that could be used as a common method of proving liability," Plaintiffs' claims do not satisfy the commonality prong. *See Morgan*, 210 Cal. App. 4th at 1362. Rather, Defendants' liability will rest on individualized

---

[3] Plaintiffs' filings highlight several lines in e-mails. For example, an e-mail from Plaintiffs' branch manager to HMCs stated that they needed to commit to having 100% enrollment in the website program and urging HMCs to enroll. [Doc. 51-3 Ex. R.]

inquiries into matters such as what each manager instructed, how each employee interpreted the instruction, and whether the employee then relied on the instructions and enrolled in the programs. *See Howard*, 2009 WL 3571984, at *5. Therefore, the commonality prong is not met because Plaintiffs fail to allege common claims capable of class-wide resolution. *See Dukes*, 131 S. Ct. at 2551.

### 3.  Typicality

Third, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3)**.** "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. Typicality requires that unnamed plaintiffs have the same or similar injury, the action is based on conduct not unique to the named plaintiff, and other class members' injuries stem from the same course of conduct. *Id*. The typicality requirement makes certification inappropriate where the class representative may spend a majority of the litigation arguing a defense unique to the representative or to a subclass. *See id.*

Plaintiffs allege that their claims are typical of the class as they were subjected to paying for the marketing expenses.[4] Defendants do not oppose certification on the grounds of typicality. Although the injuries may not be identical, the typicality prong is met because the named Plaintiffs' claims are based on the same course of conduct of HSL allegedly requiring HMCs, such as the named Plaintiffs, to enroll in the marketing programs as a condition of employment without reimbursement for the expenses. Therefore, the claims of the named Plaintiffs are "reasonably co-extensive" as to those of the absent HMC class members. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 632 (S.D. Cal. 2010) (Sammartino, J.).

### 4.  Adequate Representation

Fourth, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a

---

[4]  Plaintiff Buchanan states that he refused to pay for the website and e-business cards but was charged for the market mailers. (Mot. to Certify at 14.)

judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Plaintiffs have demonstrated a lack of conflict between themselves, counsel, other class members and the willingness to vigorously prosecute on behalf of the class. Plaintiffs adequately protect the interests of the class because the named Plaintiff were employed by Defendants, suffered under the same practices, have no conflicts with unnamed plaintiffs, and have shown vigorous pursuit of the claims at issue. (Mot. to Certify at 14.) Defendants argue that the named Plaintiffs will be more focused on pursuing individual claims rather than the class claims. (Defs.' Opp. 15.) However, Defendants do not point to any defenses unique to the named Plaintiffs. Additionally, none of the individual claims conflict with the class claims and show a conflict of interest with the putative class.

**B.     23(b)(3) Requirements**

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Rule 23(b)(3) predominance "is even more demanding than Rule 23(a)." *Comcast v. Behrend*, 133 S. Ct. at 1432. A central concern of the inquiry is "whether adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Courts consider four non-exclusive factors in determining whether the class action is a superior device. These factors include: (1) the interest of class members individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in this particular forum; and (4) the manageability of the action as a class. FED. R. CIV. P. 23(b)(3); *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997).

As noted above, the putative class fails for lack of common questions capable of class-wide resolution. Because the individual inquiries into whether HSL required enrollment in the marketing expenses go to liability and not just damages, these individual inquiries will predominate the litigation. Without common contentions, judicial economy will not be served through certification of the putative class. Therefore, the class cannot be properly certified under Rule 23(b)(3). *See Howard*, 2009 WL 3571984, at *6.

**IV. Conclusion**

Because Plaintiffs fail to meet the requirements for certification under both Rule 23(a) and 23(b)(3), Plaintiffs' Motion for Certification is **DENIED WITHOUT PREJUDICE** and Defendants' Motion to Deny Certification is **GRANTED**.

**IT IS SO ORDERED.**

DATED: April 25, 2013

M. James Lorenz
United States District Court Judge

COPY TO:

HON. MITCHELL D. DEMBIN
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL