UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BUCHANAN, *et. al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>HOMESERVICES LENDING, LLC., *et. al.*,<br><br>        Defendants. | Civil No. 11cv922 L (MDD)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [doc. #54] and GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [doc. #69]** |

On April 29, 2011, Plaintiffs Mark Buchanan and Brian Shaw ("Plaintiffs") filed this putative class wage and hour action against Defendant Homeservices Lending, LLC and Doherty Employment Group, Inc.. On October 29, 2012, Plaintiffs filed a motion for class certification, which the Court denied. Now pending before the Court are Plaintiffs' motion for partial summary judgment for their individual uncompensated overtime claim under the FLSA and Defendants' motions for summary judgment on plaintiffs' individual claims. [doc nos. 54, 69.] The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1).

/ / /

I.  **BACKGROUND**

Plaintiffs were employed by Defendants from January 2008 to April 2011, in San Diego, California. (Plfs' SSUF[1] 2.) Both plaintiffs were classified as "Home Mortgage Consultants" but Shaw was technically classified as a "Home Mortgage Consultant Jr." (*Id.*) Defendant Homeservices Lending, LLC ("HSL") is a limited liability doing business in many states throughout the United States, including Plaintiffs' San Diego branch. (SAC ¶ 8.) Defendant Doherty Employment Group, Inc. is a corporation doing business in San Diego, and throughout the United States. (*Id.* ¶ 9.) When hired, Plaintiffs were classified as exempt employees and paid a guaranteed draw plus commission pay while performing the job duties of Home Mortgage Consultants. (Dfts.' SSUF at 2, 4) A compensation plan signed by Plaintiffs upon their hiring dictated the commission they received. (*Id.* at 4.) Their primary duties were to solicit residential mortgages from various sources and to originate high-quality loans that met company guidelines. (*Id.* at 5.)

In their Second Amended Complaint, Plaintiffs assert eight individual causes of action: (1) violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et. seq.*; (2) overtime and minimum wage violations of Labor Code[2] §§ 510, 1182.11, 1194, 1198; (3) failure to provide itemized wage statements under Labor Code § 226; (4) failure to provide and/or authorize meal and rest periods under Labor Code § 512 and IWC Wage Orders; (5) failure to timely pay wages under Labor Code §§ 201, 202, 203; (6) improper deductions from wages under Labor Code § 221; (7) failure to reimburse incurred expenses under Labor Code § 2802; and (8) violation of California Business and Processions Code §§ 17200, *et. seq.*.

**II.  LEGAL STANDARD**

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material

---

[1]  Separate Statement of Uncontroverted Facts ("SSUF)

[2]  All Labor Code violations are brought under California law.

when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting FED. R.

Civ. P. 56(e)). The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Fair Labor Standards Act

Plaintiffs argue that they were incorrectly classified as exempt employees and as a result, they were denied overtime compensation for the many extra hours they expended on their jobs. FLSA dictates that employees must be compensated one and one-half times their regular hourly pay for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a)(2). The statute, however, includes several exemptions, one of which covers "administrative" employees. Employees who are not eligible for overtime because of the Administrative Exemption must meet certain requirements. They must have: 1. a primary duty that includes the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers; 2. a primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance; and 3. compensation on a salary or fee basis that is at least $455 per week. *See* 29 C.F.R. § 541.200(a); *see also* 29 U.S.C. § 213(a)(1).

Defendants, as employers looking to claim the Administrative Exemption, must prove that Plaintiffs, as Home Mortgage Consultants, not only were compensated more than $455 per week, but also they were involved in "the exercise of discretion and independent judgment with respect to matters of significance" that were "directly related to the general business operations of the employer or employer's customers." *See Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983)(An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies.").

Questions concerning the Administrative Exemption have been litigated frequently, with the DOL itself taking both sides of the debate. "In 2006, the agency issued an opinion letter

concluding on the facts presented that mortgage loan officers with archetypal job duties fell within the administrative exemption." *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966, 968 (D.C. Cir. 2013) In 2010, an "Administrator's Interpretation" was issued declaring that "employees who perform the typical job duties" of the hypothetical mortgage loan officer "do not qualify as bona fide administrative employees." *Id.* The 2010 pronouncement "explicitly withdrew the 2006 Opinion Letter." *Mortgage Bankers Ass'n v. Solis*, 864 F. Supp. 2d 193, 201 (D.D.C. 2012). Defendants rely on the DOL 2006 Opinion Letter ("2006 Opinion Letter"); Plaintiffs rely on the 2010 Interpretation.

The *Mortgage Bankers Ass'n* case addresses the conflicting 2006, 2010 DOL interpretations. Plaintiffs were composed of "mortgage loan officers who typically assist prospective borrowers in identifying and then applying for various mortgage offerings." *Mortgage Bankers Ass'n*, 720 at 968. They challenged the "DOL's decision to change their initial interpretation without first undergoing a notice-and-comment rulemaking as a violation of the APA." *Id*. This argument was rejected in the district court, but adopted in the appellate ruling: "DOL must . . . conduct the required notice and comment rulemaking." *Id*. "Once a court has classified an agency interpretation as [definitive], it cannot be significantly revised without notice and comment rulemaking." *Id.* at 971

Plaintiffs attempt to argue that *Mortgage Banker Ass'n* does not address the issue of which interpretation is valid. The Court disagrees. The *Mortgage Banker Ass'n* court commented that it would not look into the specific content or applications of the interpretations, but found that the 2010 Interpretation did not follow the proper avenues for becoming the definitive interpretation. Thus, the 2006 Opinion Letter is the definitive interpretation for analysis purposes, based on the *Mortgage Banker Ass'n's* rejection of the 2010 Interpretation as violative of the APA.

In an attempt to distinguish themselves from the plaintiffs in *Mortgage Broker Ass'n,* Plaintiffs here assert that their primary duty was sales and therefore, they are not mortgage loan brokers or officers, but simply sales staff. (Pls.' Supplemental Br. 2:16-25.) Of course, mere semantics will not disguise the evidence presented that demonstrates Plaintiffs undertook various

responsibilities that went beyond a simple sales transaction and they acknowledged as much in their depositions. For example, Plaintiffs regularly evaluated factors such as the borrower's income, employment history, assets and investments, debts and credit history and more. (Shaw Dep. 72:20-75:10.) Plaintiff Buchanan also noted that he and Shaw had "flexibility in pricing" and could "charge a client more or less" at their discretion. Buchanan also testified that he and Shaw watched the capital markets "like a hawk," including watching the bond markets, the news, and the Asian markets to determine when the best time was to lock a loan for their customer. Plaintiff Buchanan noted that the loan had to be locked before 7:00 a.m. to secure the prior day's price "and that was something we were good at." (Buchanan Dep. 101-102.) These factors involve consulting with consumers on financial matters, something Plaintiffs now deny doing in order to further distinguish themselves from the mortgage loan brokers in *Mortgage Banker Ass'n*. In his deposition, Plaintiff Shaw testified to performing various duties that the 2006 Opinion Letter qualify for the Administrative Exemption. (Shaw Dep. 72-75.)

The evidence here suggests that Plaintiffs were not merely selling a product but "collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances . . . ." (Dfts' Exh. B [doc. #54-6] DOL 2006 Opinion Letter at 4.) However, plaintiffs' evidence does not conclusively end the inquiry. Plaintiffs and defendants have presented conflicting documentary and testimonial evidence concerning plaintiffs' primary job responsibilities. The Court must conclude that the record does not resolve the applicability of the Administrative Exemption to Plaintiffs' duties. A trier of fact must weigh the parties' characterizations and credibility.

Similarly, Defendants' contention that Plaintiffs fall within the FLSA "highly compensated employee exemption" because they were paid more than $100,000 per year and "customarily and regularly perform[] at least one of the exempt duties or responsibilities of an exempt executive, administrative, or professional employee, " 29 C.F.R. § 541.601(a), is subject to the weighing of facts concerning the second prong of the exemption. This determination is not permitted within summary judgment motion practice.

Accordingly, the Court will deny both Plaintiffs' and Defendants' motions regarding Plaintiffs' individual uncompensated overtime claims under the FLSA.

### B. California Law Exemptions

#### 1. Overtime Pay

Plaintiffs overtime pay claims are premised on Defendants' alleged misclassification of Plaintiffs as exempt employees. Defendants argue that they were not required to make overtime pay available to Plaintiffs because they were subject to the commission sales exemption (Cal. Code. Regs., tit.8, § 11070, subd. (3)(D)). California Labor Code § 510(a) provides that eight hours of labor constitute a day's work, and that any work in excess of eight hours in one day, 40 hours in one workweek, and the first eight hours worked on the seventh day of work in any workweek "shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Under California Industrial Welfare Commission (IWC) Wage Order Wage Order 4-2001, section 3(D), an employee is exempt from overtime requirements if his "earnings exceed one and one half times the [state] minimum wage" and if "more than half the employee's compensation represents commissions." If a draw is taken against the commissions, the entire payment qualifies as a commission for the purposes of the exemption where employees are regularly paid commission exceeding the draw. *Muldrow v. Surrex Solutions Corp.*, 208 Cal. App. 4th 1381, 1396 (2012). It is undisputed that Plaintiffs were regularly paid commission exceeding their draw.

Plaintiffs first argue that the California commission sales exemption and the FLSA administrative exemption are mutually exclusive.[3] The Court disagrees. The state commission sales exemption applies to the compensation that an employee receives, primarily from their work in sales. In contrast, the FLSA administrative exemption requires Defendants to show that plaintiffs' "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). Therefore, an employee who

---

[3] As noted above, the Court finds that because of the presence of material factual disputes, it cannot resolve the applicability of the FLSA administrative exemption as a matter of law.

satisfies the FLSA administrative exemption is not prohibited from also satisfying the state commission sales exemption.

Plaintiffs next contend that Defendants have failed to meet their burden of showing the sales commission exemption is applicable under the facts presented. The California Court of Appeal stated: "We conclude Labor Code section 204.1 sets up two requirements, both of which must be met before a compensation scheme is deemed to constitute 'commission wages.' First, the employees must be involved principally in selling a product or service, not making the product or rendering the service. Second, the amount of their compensation must be a percent of the price of the product or service." *Ramirez v. Yosemite Water Co.,* 20 Cal.4th 785, 803–804 (1999)(quoting *Keyes Motors, Inc. v. Division of Labor Standards Enforcement*, 197 Cal. App. 3d 557, 563 (1987).

Plaintiffs do not dispute that the first prong of Labor Code § 204.1 has been met: Plaintiffs were selling a product – mortgage loans. However, Plaintiffs contend that commission must be a strict percentage of the product sold. But the recent case of *Muldrow v. Surrex Solutions Corp.,* 208 Cal. App. 4th 1381, 1394-95 (2012), discusses that California no longer expects that a commission must be a strict percentage of the sales price so long as the payment is tied to the profitability of the item sold:

> Appellants' contention that the term "commissions" in the relevant regulation . . . should be interpreted to include only those commissions that are based strictly, and solely, on a percentage of the price of the product or service rendered constitutes an excessively narrow and wooden application of *Keyes Motors* and *Ramirez.* Such a limited definition would not comport with the contemporary legal sense of the word "commission."

*Muldrow*, 208 Cal. App. 4th at 1395.

Relying on *Muldrow*, Defendants contend that "the payments here are a percentage of the product sold. HMCs receive a number of 'basis points' on their loan volume. While the number basis points per origination may vary for different financial products, all of their incentive pay was expressed as some percentage of the value of the loans originated." (Dfts' Reply at 4.)

The record presented demonstrates that Plaintiffs were not paid a strict percentage of the value of the mortgage loans as commission but instead were paid on a basis point number based

8

11cv922

upon the number of loans sold and the value of the loans. (Dfts' Exh. D, E, F) Plaintiffs' pay, beyond a draw, was some percentage of the value of the loans originated and was based on sales activity for loans that closed. The Home Mortgage Consultants were expressly not compensated for the time they spent counseling borrowers on the best loan product. The amount of the loans closed resulted in increased "commission" pay and Plaintiffs were paid through "commissions" above the one and one half times minimum wage requirement for the exemption. Thus, the undisputed evidence shows that the Defendants' compensation plan meets the second prong of Labor Code § 204.1. (Defs.' Exhs. J, K.)

Based on the foregoing, Defendants have met their burden of showing the commission sales exemption is applicable under the facts presented. Defendants are entitled to summary judgment regarding Plaintiffs' Second Cause of Action for "Failure to Pay Overtime Compensation and Minimum Wage in Violation of California Law."

### C. Labor Code Meal and Rest Period Claims

Plaintiffs contend that Defendants deprived them of their right to take meal and rest breaks. Under California law, the meal period requirement is "satisfied if the employee (1) has at least 30 minutes uninterrupted, (2) is free to leave the premises, and (3) is relieved of all duty for the entire period." *Ricaldai v. U.S. Investigations Servives, LLC*, 878 F. Supp. 2d 1038, 1039-40 (citing *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (Cal. 2012) (discussing Labor Code § 512).

California Code of Regulations states:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours.

CAL. CODE REGS. tit. 8, § 11070(12)(A); *see also* CAL. LABOR CODE § 226.7(a)("No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.").

The *Brinker* Court held the "authorize and permit" standard for meal period and rest

break violations applicable: "[A]n employer's obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the [rest break] for whatever purpose he or she desires, but the employer need not ensure that no work is done." *Brinker*, 53 Cal.4th at 1017. However, "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Cicairos v. Summit Logistics, Inc.,* 133 Cal. App. 4th 949, 962–963 (2005).

Defendants argue that the undisputed evidence demonstrates that Plaintiffs had the freedom to take meal and rest breaks and to chose their schedule with no input or oversight from anyone at HSL. (Kelso Dec. ¶¶ 2-3.) Although Plaintiffs argue that they felt pressured to work during their meal and rest breaks, they concede that they took these breaks as they saw fit and were never told that they were forbidden to take either rest or meal breaks. (Buchanan Dep. 48:8-17, 104: 17-105:15, Shaw Dep. 62:2-63:8.)

Plaintiffs have failed to present any evidence to show that they were pressured into working by anything other than their own desire to increase their commissions. Indeed, Plaintiffs' own deposition testimony undercuts any notion that they were pressured by Defendants to forgo meal or rest breaks. Because there is no dispute of material fact as to rest and meal breaks, Defendants are entitled to summary adjudication of Plaintiffs' fourth cause of action.

### D. Inaccurate Itemized Wage Statements; Willful Failure to Timely Pay Wages Due; Unfair Competition

Plaintiffs' third and Buchanan's fifth causes of action for inaccurate itemized wage statements and willful failure to pay final wages due are derivative of their allegation that they were owed overtime pay because of their misclassification as exempt under California law. Similarly, their eighth cause of action for unfair competition, California Business and Professions Code §§ 17200, *et seq*., is based upon their Labor Code overtime claim. Because the undisputed evidence demonstrates that Plaintiffs are exempt commission sales employees under the Labor Code, the derivative claims must fail. Defendants are entitled to summary judgment on these claims.

**E.  Improper Deductions from Wages and Reimbursement of Incurred Business Expenses**

Plaintiffs' sixth and seventh causes of action are corollaries. In their sixth cause of action, Plaintiffs allege Defendants violated California Labor Code § 221 by unlawfully deducting loan lock rate fees, appraisal fees, credit report fees and improperly shifted and required the Home Mortgage Consultants subsidize payroll wages for Home Mortgage Assistants. In the seventh cause of action arising under Labor Code § 2802, Plaintiffs allege Defendants failed to reimburse business expenses incurred by Plaintiffs for loan lock rate fees, appraisal fees, credit report fees; and the improper shifting and subsidizing of payroll wages for Home Mortgage Assistant employees of Defendants through deductions of "Home Mortgage Assistant" wages directly from Plaintiffs.

**1.  Labor Code § 221**

Labor Code § 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Thus, § 221 "prohibits an employer from collecting or receiving wages that have already been earned" by the employee. *Steinhebel v. Los Angeles Times Communications, LLC*, 126 Cal App. 4th 696, 707 (2005); *see also DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800 (2012); *Koehl v. Verio, Inc*., 48 Cal. Rptr. 3d 749, 767 (Cal. Ct. App. 2006) (Labor Code provision prohibiting an employer from recouping paid wages was enacted in order to prevent employers from utilizing secret deductions or kickbacks to pay employees less than their stated wages. )

Defendants contend that this claim must fail because all the adjustments were made to Plaintiffs' commissions *before* they were earned under the written compensation plan. (*See* Dfts' Exh. D, E, F to MSJ.)

Because a commission is not earned until the express contractual conditions are met, the statute prohibiting employers from receiving from an employee "any part of wages theretofore paid" does not prohibit an employer from recouping an advance on a commission if the conditions are not satisfied. *Sciborski v. Pacific Bell Directory,* 140 Cal. Rptr. 3d 808, 815 (Cal. Ct. App. 2012). In other words, if at the time of payment the employer cannot determine whether

the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable, the "advance" may be recovered by the employer. *Id.* Similarly, an employer may legally advance commissions to its employees prior to the completion of all conditions for payment and, by agreement, charge back any excess advance over commissions earned against any future advance should the conditions not be satisfied. *Koehl*, 48 Cal. Rptr. 3d at 767.

In *Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal. 4th 217 (2007), the California Supreme Court held that a bonus system at Ralphs did not violate § 221 because "[b]y the Plan's terms, it was *only after* the [business] had completed the relevant period of operation, and the resulting profit or loss figure was then derived, that it was possible to determine, by further comparison to the preset targets, whether Plan participants were entitled to a supplementary incentive compensation payment and if so, how much." *Id.* at 229. Thus, the Court approved "a plan that does not provide a wage amount until costs are taken into account." *Marr v. Bank of America*, 2011 WL 845914 (N.D. Cal. 2011)(citing *Ralphs,*42 Cal. 4th at 229.)

Here, the HSL's Compensation Plan provided that closing individual loans generated a commission credit at a specified interest rate for the loan and the actual commission wages were provided only after the process for adjustments for overage, underage and trust losses on collected fees. Accordingly, Defendants do not run afoul, in general, of § 221.

Although Plaintiffs agree that Defendants may make *lawful* deductions under the terms of Defendants' commission plan as discussed in *Marr*, they dispute they consented to pay a mortgage loan processor from their commissions because the deduction was for the benefit of the employer, not the employee. There is, therefore, a triable issue fact concerning whether the Compensation Plan regarding Plaintiffs' payment of their loan processor her wages from their commissions violated Labor Code § 221

As a result, the Court will grant Defendants' motion on Plaintiffs' Labor Code § 221claim except as to the issue of payment of the loan processor's commissions from their commissions.
/ / /
/ / /

### 2. Labor Code § 2802

Labor Code § 2802(a) provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Plaintiffs contend that Defendants have not addressed Plaintiffs' § 2802 claim with any analysis. The Court agrees. Although the statute is mentioned in their motion and reply memoradum, there is no substantive discussion of the claim. Accordingly, the Court will deny Defendants' motion on this claim.

## IV. CONCLUSION & ORDER

In light of the foregoing, **IT IS ORDERED**:

1. Plaintiffs' motion for partial for summary judgment is **DENIED**. [doc. # 54.]

2. Defendants' motion for summary judgment is **DENIED** as to Plaintiffs' FLSA claim and seventh cause of action under Labor Code § 2802 and is **GRANTED** as to Plaintiffs' second, third, fourth, fifth, and eighth claims in their entirety, and in part as discussed above with respect to Plaintiffs' sixth cause of action under Labor Code § 201. [doc. #69]

3. The parties shall jointly contact the assigned magistrate judge within three court days of the filing of this Order to schedule a Mandatory Settlement Conference.

4. The Proposed Final Pretrial Conference Order required by Local Rule 16.1 (f) (6) shall be prepared, served, and lodged on or before **November 18, 2013**. The Pretrial Order shall include a summary description of the case that can be read to the jury.

5. The final Pretrial Conference is scheduled on the calendar of the undersigned on **December 9, 2013** at **11:00 a.m.**.

**IT IS SO ORDERED.**

DATED: September 30, 2013

M. James Lorenz
United States District Court Judge

/ / /

COPY TO:

HON. MITCHELL D. DEMBIN
UNITED STATES MAGISTRATE JUDGE
ALL PARTIES/COUNSEL